IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**LESLIE MORGAN WOOD**                                                             **PLAINTIFF**

**V.**                                                                        **CIVIL ACTION NO. 4:21-cv-166-DAS**

**COAHOMA COUNTY, MISSISSIPPI**                                       **DEFENDANT**

ORDER AND MEMORANDUM OPINION

Now before the court are Coahoma County, Mississippi's Motion for Summary Judgment and Morgan Wood's Motion to Strike Unsupported Evidence. Having reviewed the filings, as well as the applicable authorities, the court is prepared to rule.

*Relevant Factual and Procedural Background*

Morgan Wood ("Wood") has a lengthy employment history with Coahoma County, Mississippi ("the County"). The County first hired Wood as clerical staff in June 2001. In February 2002, the then County Administrator notified Wood that her employment status would be changed to permanent, and she would receive a 10% raise, bringing her monthly salary to $1,705. Effective October 1, 2007, the Board of Supervisors increased Wood's annual salary to $30,000 and gave her the additional job titles of receiving clerk, solid waste manager, and administrative assistant. In February 2015, the Board of Supervisors voted to increase Wood's annual salary to $34,500 and voted again to increase her annual salary by $3,500 in July 2016, also giving her the additional roles of inventory clerk and emergency management support. On September 1, 2017, the Board of Supervisors appointed Wood as the Assistant County Administrator at an annual salary of $52,000. Only five months later, on February 1, 2018, the Board of Supervisors unanimously approved the appointment of Wood as County Administrator

at an annual salary of $75,000. Exactly one year later, on February 1, 2019, the Board of Supervisors increased Wood's annual salary to $90,000.

The Board of Supervisors that voted to appoint Wood as County Administrator on February 1, 2018, consisted of three white supervisors and two Black supervisors.[1] The same Board members voted unanimously to increase her salary to $90,000 in February 2019. On January 1, 2020, after a county-wide election, the racial makeup of the Board of Supervisors changed to three Black supervisors and two white supervisors. Supervisor Johnny Newson (Black) was voted President of the Board, and the remaining Board members were Supervisor Paul Pearson (white), Supervisor Pat Davis (white), Supervisor Derrell Washington (Black), and Supervisor Roosevelt Lee (Black).[2] As was customary after the appointment of a new Board, on January 22, 2020, Supervisors Newson, Pearson, Davis, and Washington voted unanimously to reappoint Wood as County Administrator. Supervisor Lee was not present for that vote.

On May 3, 2021, Supervisors Newson, Lee, and Washington – who are all Black – voted to terminate Wood's employment with the County. Supervisors Pearson and Davis voted against termination. In a letter dated May 4, 2021, President Newson advised Wood of her termination citing the Board's decision "to go in a different direction." Doc. 160-7. Ann Hoskins, a Black woman, replaced Wood as County Administrator.

Wood filed a charge with the Equal Employment Opportunity Commission and received notice of her right to sue by letter dated September 30, 2021. Wood filed this action on December 8, 2021, alleging the County unlawfully terminated her because of her race.

---

[1] This Board of Supervisors consisted of President Paul Pearson (white), Supervisor Johnny Newson (Black), Supervisor Pat Davis (white), Supervisor Will Young (white), Supervisor Roosevelt Lee (Black).
[2] These newly elected Supervisors are collectively referred to "the Board" herein.

*Summary Judgment Standard*

Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Nabors v. Malone*, 2019 WL 2617240, at *1 (N.D. Miss. June 26, 2019) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.'" *Id*. (quoting *Celotex*, 477 U.S. at 323). "The nonmoving party must then 'go beyond the pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting *Celotex*, 477 U.S. at 324). Importantly, "the inferences to be drawn from the underlying facts contained in the affidavits, depositions, and exhibits of record must be viewed in the light most favorable to the party opposing the motion." *Waste Mgmt. of La., LLC v. River Birch, Inc.*, 920 F.3d 958, 964 (5th Cir. 2019) (quoting *Reingold v. Swiftships, Inc.*, 126 F.3d 645, 646 (5th Cir. 1997)). But "[c]onclusory allegations, speculation, unsubstantiated assertions, and legalist arguments are not an adequate substitute for specific facts showing a genuine issue for trial." *Nabors*, 2019 WL 2617240 at *1 (citations omitted).

*Analysis and Discussion*

    I.       Race Discrimination

Wood contends that the County is liable under Title VII and 42 U.S.C. § 1981. The Court will analyze these claims together, as "[t]he analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims."³ *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir. 2005)).

To succeed on a claim for race discrimination under Title VII or § 1981, a plaintiff may establish a *prima facie* case either through direct or circumstantial evidence. *Gilleylen v. City of Tupelo, Miss.*, 2017 WL 4050322, at *2 (N.D. Miss. Sept. 13, 2017). In the absence of direct evidence, as is the case herein, "the Court uses the *McDonnell Douglas* burden-shifting framework to assess the sufficiency of the evidence." *Gossett v. Allegiance Specialty Hosp. of Greenville, LLC*, 2021 WL 4504694, at *3 (N.D. Miss. Oct. 1, 2021) (citing *Harville v. City of Houston*, 945 F.3d 870, 874-75 & n. 10 (5th Cir. 2019)).

Under the *McDonnell Douglas* framework, the plaintiff bears "the initial burden to establish a *prima facie* case of discrimination[.]" *Harville*, 945 F.3d at 875. "The *prima facie* case, once established, creates a presumption of discrimination and the burden then shifts to the [defendant] to articulate a legitimate, non-discriminatory reason for the adverse employment action." *Id*. (citing *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). If the employer sustains its burden, "the *prima facie* case is dissolved, and a plaintiff ... must establish either: (1) that the employer's proffered reason is not true but is instead a pretext for

---

³ The County contends Wood failed to respond to its arguments in support of summary judgement on her § 1981 claims. Because the legal analysis of Wood's Title VII and § 1981 claims is identical, the County's argument regarding waiver is not well taken.

discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another 'motivating factor' is the plaintiff's protected characteristic." *Mengistu v. Mississippi Valley State Univ.*, 2017 WL 3880319, at *2 (N.D. Miss. Sept. 5, 2017), *aff'd,* 716 F. App'x 331 (5th Cir. 2018) (citing *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

    a. Prima Facie Case

The County first argues that Wood has failed to carry her burden to establish a prima facie case of discrimination. The Fifth Circuit has articulated the plaintiff's prima facie burden as follows:

> To establish a *prima facie* case of racial discrimination in employment, an employee must demonstrate that she (1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside [her] protected group or was treated less favorably than other similarly situated employees outside the protected group.

*Morris v. Town of Independence*, 827 F.3d 396, 401 (5th Cir. 2016) (citing *Willis v. Cleco Corp.*, 749 F.3d 314, 319-20 (5th Cir. 2014)). The parties do not dispute that Wood satisfies the first three elements of her prima facie case – she is white, she was qualified for the position of county administrator, and the County terminated her employment. However, the County argues that Wood has not offered any admissible evidence to satisfy the fourth element, noting that her Amended Complaint only alleges that "favorable treatment was given to persons outside of the protected class and/or other similarly situated (Blacks) were treated more favorably." Doc. 161 at 35 (quoting Doc. 26, ¶ 13).

While Wood's Amended Complaint recites only a portion of the fourth prong of the prima facie case outlined in *Morris v. Town of Independence* and does not specifically state that

she "was replaced by someone outside h[er] protected group," she clearly alleges and has presented evidence that this occurred. The Amended Complaint identifies Wood as a Caucasian woman and alleges that after she was fired, she was replaced by Ann Hoskins, a Black employee. Moreover, the record evidence supports Wood's allegations that the Board voted to terminate her employment with the County on May 3, 2021, and replaced her with Ann Hoskins shortly thereafter.

Because the fourth prong of the prima facie case can be satisfied by establishing that Wood "was replaced by someone outside [her] protected group *or* was treated less favorably than other similarly situated employees outside the protected group," Wood has clearly met her burden. *See Morris*, 827 F.3d at 401 (emphasis added); *see also Cook v. Hinds Cnty. Bd. of Supervisors*, 2023 WL 5354161, at *5 (S.D. Miss. Aug. 21, 2023) (finding the plaintiff, a white woman, pled a plausible race-discrimination claim by alleging she was replaced by a less-qualified Black employee). As described by the Fifth Circuit, a plaintiff's prima facie burden is "very minimal," and the court finds that Wood has presented sufficient evidence to satisfy such a low threshold. *See Owens v. Circassia Pharm., Inc.*, 33 F.4th 814, 825 (5th Cir. 2022).

    b. Legitimate, Nondiscriminatory Reason

The burden then shifts to the County to "articulat[e] some legitimate, nondiscriminatory reason for the adverse employment action.'" *Russell v. City of Tupelo, Miss.*, 544 F. Supp. 3d 741, 757 (N.D. Miss. June 16, 2021) (quoting *Snyder v. L-3 Comms. Vertex Aerospace, LLC*, 2020 WL 869977, at *6 (N.D. Miss. Feb. 21, 2020)). At this stage, the County's burden is "a mere burden of production rather than a burden of persuasion" and involves no credibly assessment. *Id*. (citation omitted); *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 8-9 (5th Cir. 2009).

The County asserts three broad reasons for Wood's termination and cites specific reasons within each rationale. The County's reasons include (1) Wood's failure to follow multiple directives from the Board, (2) her failure to comply with the Board's expectations, and (3) issues with her job performance. The County cites two instances where Wood failed to follow the Board's directives: it claims she failed to procure cell phones for the comptroller and payroll clerk and purchase vehicles for certain Supervisors in a timely manner. The County contends Wood's involvement in two human resources investigations caused the Board to lose trust in her and further bolstered their feelings that Wood disregarded Board directives. Specifically, the County explained that

> the board felt as though Wood inserted herself and overstepped her boundaries as to writing up employees in certain personnel or Human Resources issues for personal or political reasons. Specifically, the Board felt as though Wood suspended George Hines due to her relationship with Jeff and William Young, as well as the Clarksdale City Commissioner. Similarly, the Board felt as though Wood was attempting to manufacture a sexual harassment complaint against Tracy Vance because she was friends with the alleged victim.

Docket 161 at 39. The County also claims Wood systematically targeted Stanley Lynom, the interim fire chief and county fire coordinator, because he ran for supervisor against Supervisor Pearson, causing him to resign. Additionally, the issues regarding Wood's work performance that contributed to the County's decision to terminate her included her delay in getting credit cards for department heads and purchasing equipment for the County.

The County primarily relies on Supervisors' testimony stating their reasons for terminating Wood. Supervisor Washington cited Wood's involvement in the two human resources investigations as a motivating reason stating, "I just didn't want to fool with her anymore because I didn't trust her anymore after that." Doc. 157-12 at 43:9-11. President Newson testified "a culmination of events" influenced his vote to terminate Wood stating "[s]he

would never adhere to the Board's directives, and that was one problem." Doc. 157-13 at 55:10, 56:13-15. Supervisor Lee testified that irregularities with Wood's work influenced his decision to vote yes. Accordingly, the court finds that the County has met its burden of production of a legitimate, nondiscriminatory reason for Wood's termination.

      c. Pretext

The burden shifts back to Wood to "produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination.'" *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)). Wood may establish pretext either through evidence of disparate treatment or by showing that the County's proffered explanation is false or "unworthy of credence." *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (*quoting Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir. 2001)).

"Employment laws do not transform federal courts into human resources managers, so the inquiry is not whether [the County] made a wise or even correct decision to [terminate Wood]." *Owens*, 33 F.4th at 826 (citing *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005)). "The ultimate determination ... is whether, viewing all of the evidence in a light most favorable to [Wood], a reasonable factfinder could infer discrimination." *Id*. (quoting *Crawford v. Formosa Plastics Corp., La.*, 234 F.3d 899, 902 (5th Cir. 2000)).

To evaluate a claim of pretext, "a court should consider 'the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case.'" *Crawford*, 234 F.3d at 902 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 148-49 (2000)). Even when such a showing is made, it is not always enough to overcome summary judgment if "no rational factfinder could conclude that discrimination had occurred." *Reeves*, 530 U.S. at 135. The

"evidence must be of sufficient 'nature, extent, and quality' to permit a jury to reasonably infer discrimination.'" *Owens*, 33 F.4th at 826 (quoting *Crawford*, 234 F.3d at 903). When the employer offers more than one reason, "[t]he plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace*, 271 F.3d at 220.

"[I]n an appropriate case, a factfinder may infer the ultimate fact of retaliation from the falsity of the employer's explanation [alone]." *Jan. v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023) (quoting *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577–78 (5th Cir. 2020)); *see also White v. Patriot Erectors LLC*, 2023 WL 3400552, at *3 (W.D. Tex. May 11, 2023) ("Well-established Supreme Court and Fifth Circuit law, however, states that a showing of pretext is, itself, typically sufficient evidence of animus to prove discrimination.").

Wood rebuts the County's proffered justifications for her termination with evidence that its reasons are false or unworthy of credence. She offers evidence challenging the substance of the County's reasons, *i.e.*, evidence demonstrating their falsity, and offers other evidence from which a rational factfinder could conclude that discrimination had occurred.

        i. Following Directives

As to the County's assertion that Wood failed to purchase cell phones, Wood contends she immediately submitted the Supervisors' request for phones to Alice Foster, the County's purchase clerk. In an affidavit, Ms. Foster testified that "[a]ny alleged delays in the acquisition of cellular phones was also under [her] duties as Purchase Clerk," and she was never reprimanded for a delay in purchasing cell phones. Doc. 167-2.

Regarding the purchase of vehicles, Wood's affidavit attests that she "signed the Purchase Order for the vehicles the day of the Board meeting […] in which it was approved" and "gave the Purchase Order to the Purchase Clerk that very day." Doc. 167-1, ¶ 20. Ms. Foster's

affidavit confirms Wood's testimony, stating Wood "gave [her] the Purchase Order immediately after the Board had voted to approve it." Doc. 167-2, ¶ 2. Wood maintains the entire application process for obtaining the vehicles was handled by Ms. Foster, whose affidavit offers a timeline documenting her efforts to purchase the desired vehicles and delays caused by the COVID-19 pandemic. Wood further refutes the County's contention that it took approximately two years for the Supervisors to get their vehicles; her affidavit provides that the vehicles were ordered in December 2019 and delivered in August 2020, only eight and a half months later.

      ii.   Expectations

The two human resources investigations implicated in Wood's termination involved County employees Tracy Vance and George Hines. Wood rebuts the County's contention that she was inappropriately involved in these investigations.

      1.   Tracy Vance

The County maintains the Board felt that Wood became inappropriately involved in the investigation into Tracy Vance's alleged conduct by pressuring or coercing the complainant to come forward. However, Wood's affidavit states "[t]he Board never, not once, told [her] not to be involved in the [Tracy Vance] investigation." Doc. 167-2, ¶ 24. The County claims the Board was frustrated by Wood's continued involvement even after requesting that Benita Myles, the Human Resources manager, take over the investigation. Yet Ms. Myles testimony is at odds with this assertion. Ms. Myles testified that she did not actively investigate Mr. Vance's case and was never given an instruction to do so.[4] She stated under oath that as County Administrator, Wood

---

[4] Q.   Do you know if the supervisors instructed you to investigate the matter?
    A.   I didn't talk to them about --- directly on this one.
    Q.   Okay.
    A.   As far as --- from what I can remember, even in investigating, I was never directed to per se interview Mr. Vance, as I was Mr. Hines. This one, I never really had any contact with him.
        […]
    Q.   … And you never had a direct request from the supervisors.

received instructions from the Board and then further instructed Ms. Myles, whose investigative role was limited to what Wood and Tom Ross, the Board's attorney, explicitly told her to do. Ms. Myles testified that it was not unusual for Wood to remain involved in Mr. Vance's personnel matter stating, "I think it was pretty much dropped on her, and she had to actually deal with it." Doc. 160-3 at 39:6-8. Speaking to the Vance and Hines (discussed *infra*) investigations specifically, Ms. Myles testified that it was customary for a complainant to go directly to the County Administrator who would then collaborate with Ms. Myles in her capacity as HR manager. This was corroborated by Supervisor Pearson's testimony that personnel issues were first discussed with the HR manager and the County Administrator before being brought to the Board. Moreover, Supervisor Lee, who voted yes to terminate Wood, testified that there was not anything improper about the way Wood handled the County's investigation into Mr. Vance's conduct.

Finally, it appears race may have played a role in the Vance matter, at least in the mind of Supervisor Newson. During his deposition, Supervisor Newson – a black member of the Board who voted to terminate Wood – pointed out that Mr. Vance was Black and the complainant was white. He then explained unprompted, "I felt as if that was racial motivation on Morgan's part to get rid of Tracy." Doc. 157-13 at 73:13-14.

2. George Hines

The County contends Wood mishandled the investigation into George Hines' conduct because of her personal and political motivations. The County claims that Wood was dating the complainant's uncle, causing her to blow the situation out of proportion. The County contends

---

A. No, I didn't.
Doc. 160-3 at 14:9-15:4.

that the City Commissioner instructed Wood that something needed to be done regarding Mr. Hines, presumably because Mr. Hines was running against a white individual in an upcoming city election. President Newson and Supervisor Washington believed Wood orchestrated Mr. Hines' suspension without pay and overstepped her boundaries as a disciplinary.

Wood's affidavit states she handled Mr. Hines' situation exactly as she should have – "with guidance from counsel and the backing of the [employee] handbook." Doc. 167-1 at ¶ 26. She testified she "never let [her] personal relationships get in the way of anything." *Id*. at ¶ 19. None of the record evidence contemporaneously documenting the incident involving Mr. Hines suggests that Wood took unilateral or inappropriate action with respect to the discipline decision. The record indicates that Board attorney Steve Brandon believed Mr. Hines had committed a fire-able offense; Mr. Hines' statement indicates he was informed by Otis Griffin, his direct supervisor, that he was suspended, and Wood offered similar testimony; and Mr. Griffin's statements corroborate that he suspended Mr. Hines.

Notably, when asked why the Board reversed Mr. Hines' suspension without pay, Supervisor Davis did not testify that it had anything to do with Wood's handling of the matter but instead testified "[w]e felt sorry for him." Doc. 157-14 at 17:12.

### 3. Stanley Lynom

The County claims that after Stanley Lynom, an African American, was promoted to interim fire chief and coordinator in 2020, Wood began systematically targeting him in order to cause him to resign. The County contends this is because Chief Lynom ran against Supervisor Pearson (white) in the 2019 election and because of the close relationship Wood had with Supervisor Pearson. In support of this argument, the County primarily relies on text messages between Wood and Supervisor Pearson that were discovered after her termination. Such after-

acquired evidence cannot be utilized as a basis for Wood's termination. *See Weeks v. Coury*, 951 F. Supp. 1264, 1275 (S.D. Tex. 1996) (noting that after-acquired evidence does not bar defendant's liability). The County's proffered justification for Wood's termination must be based on information that it knew and relied on at the time it decided to terminate her employment.

Chief Lynom testified that Wood made him turn in his County-issued truck but did not require the same of other employees. Yet Wood's sworn testimony refutes Chief Lynom's assertions insinuating that Wood singled him out. Wood's affidavit states that while the Board discussed employees taking County vehicles home, no employee ever had their vehicle taken away. She explains that the Board was looking to lower fuel expenses, and they had mentioned cutting down on employees taking their vehicles home. Wood explicitly testified "[n]either [Lynom's] vehicle nor anyone else's was taken away." Doc. 167-1 at ¶ 28.

      iii.   Job Performance

As for the County's contention that Wood's delay in getting credit cards for department heads and purchasing other equipment for the County was cause for her termination, Wood states in her affidavit,

> [t]here was not a delay in getting County credit cards. I took the time to research what other counties did; I sought technical support from the State Auditor's Department. I did not delay in getting items for the Justice Court office. Again, the building was finished during COVID-19. I had so many things that were requested on order but there was a delay in getting items because of COVID-19.

Doc. 167-1 at ¶29. Supervisor Pearson corroborates Wood's testimony when he stated in his deposition that he thought "she was waiting to see exactly how to do that or something. It was some – some way it had to be done in order to satisfy the audit department, I think. And I think that's what she was waiting on." Doc. 157-15 at 73:6-11.

Wood contends that her allegedly poor performance was never discussed with her and is now being used to justify discrimination against her. Wood testified that at the time of her termination, "[she] was the only employee terminated without the use of following [*sic*] the Policies and Procedures Handbook." Doc. 167-1 at ¶ 15. While the County takes the opposite position, it has presented no documentation indicating performance or discipline issues despite allegedly having experienced such issues with Wood for some time. In fact, Supervisors Washington[5] and Newson[6] both testified that Wood was never given any type of written reprimand related to her job performance or alleged failure to follow the Board's directives. Even the County's termination letter makes no reference to any of the purported reasons for Wood's termination but instead only vaguely states that the Board "had decided to go in a different direction." Doc. 160-7. Ultimately, the record contains competing testimony as to Wood's work performance without any documented communication with her surrounding the same. The Board's failure to take any disciplinary action against Wood for *any* of the alleged bases for her termination is compelling to the court. This, combined with the fact that several of the County's reasons for Wood's termination involved at least an allegation of racism, that the Board's racial makeup changed to majority Black, and that the three Black Supervisors voted to terminate Wood while the two white Supervisors voted against termination, contributes significantly to an inference of discrimination.

---

[5] Q.  Was Ms. Wood given any type of written reprimand regarding not following the Board's order for direction in a timely fashion?
 A.  Not that I'm aware of.
Doc. 157-12 at 16:25-17:3.

[6] Q.  Did the Board ever issue Ms. Wood any type of written reprimand with regard to the vehicles or anything else, any other performance issues?
 A.  No, we didn't issue any reprimand. I didn't feel as if it was that stringent enough to go and issue a written reprimand because if you've got a County Administrator working for you, you should be able to communicate with them.
Doc. 157-13 at 13:8-16.

Notably, Wood's 19-year employment history with the County is marked by consistent promotions and pay raises. The Board instructed Wood to set up a COVID-19 vaccination site in Coahoma County, which was recognized by the Mississippi State Department of Health as one of the best-run sites in Mississippi and was visited as a model by other counties and agencies. Wood was praised for presenting a balanced budget. Ms. Myles, the County's HR manager, testified she never had any issues with Wood's job performance during her tenure as County Administrator and was surprised by Wood's termination. Supervisor Davis, who voted against terminating Wood, testified the motion to terminate came "out of the blue." Doc. 157-14 at 8:10-14. Supervisor Pearson, who also voted no, testified he was "stunned" and "caught by surprise" regarding the motion to terminate Wood. Doc. 157-15 at 9:5-7. Pearson further testified that although he could not prove it, he felt that Wood's termination was influenced by her race and that she was treated poorly and unfairly.

Construing the evidence in the light most favorable to Wood, she has presented sufficient evidence for a reasonable factfinder to reject the County's reasons for her termination. The County argues that even if Wood can establish the Board's reasons for terminating her are false or unworthy of credence, summary judgment is warranted because "Wood has failed to provide more than a 'mere scintilla of evidence that the true reason for her termination was discriminatory animus[.]'" Doc. 175 at 8-9 (citing *Owens*, 33 F.4th at 834). However, "the Court in *Owens* only required a showing of animus after it found that the plaintiff's evidence on pretext was not of sufficient 'nature, extent, and quality' to infer discrimination." *White*, 2023 WL 3400552, at *5. That is not the case here. The present facts create more than a disagreement as to the County's assessment of Wood's overall job performance, and she has produced sufficient evidence of pretext from which a jury could reasonably infer that discrimination took place.

Accordingly, questions of fact remain as to the County's reasons for Wood's termination rendering summary judgment inappropriate.

    d. Same-Actor Inference

The County contends it is entitled to the "same-actor inference" on the basis that the same Board hired and fired Wood. "The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue" based on the theory that it is irrational for an employer to show animus in termination but not in hiring. *Spears v. Patterson UTI Drilling Co.*, 337 F. App'x 416, 421-22 (5th Cir. 2009). "The inference is strong when the same supervisory employee hires and fires a plaintiff within a short period of time, and even stronger when the supervisor and the employee are members of the same protected class." *Grelle v. City of Windcrest*, 539 F. Supp. 3d 657, 667 (W.D. Tex. 2021). The County maintains that the same Board that voted to reappointment Wood as County Administrator in January 2020 also voted to terminate her employment, thus warranting the application of the inference that discriminatory animus was not present.

Wood opposes application of the same-actor inference arguing an issue of fact exists as to whether the same Board was responsible for both her hiring and firing. The Board of Supervisors was comprised of the following members when it voted to appoint Wood as County Administrator on February 1, 2018: Board President Pearson and Supervisors Davis, Young, Newson, and Lee. The makeup of the Board had changed when it reappointed Wood as County Administrator on January 22, 2020. At that time, Supervisor Newson was President of the Board and he, along with Supervisors Davis, Pearson, and Washington, voted to reappoint Wood. Supervisor Lee was not present at the January 22, 2020 Board meeting. When the Board voted to

terminate Wood's employment on May 3, 2021, President Newson and Supervisors Pearson, Lee, and Washington cast the deciding votes.

The same-actor inference is inapplicable here because the same Supervisors were not involved in the hiring, reappointment, and firing decisions.[7] Although some of the same Supervisors were involved in each of these decisions, the Board makeup differed at each decision point as noted above. *See Hargrave v. Univ. of Washington*, 113 F. Supp. 3d 1085, 1097 (W.D. Wash. July 1, 2015) (finding inference inapplicable where it appeared that the hiring decision-makers changed over the relevant time period)); *see also Coburn v. PN II, Inc.,* 372 Fed.Appx 796, 799 (9th Cir. 2010) (finding a district court erred in applying the same-actor inference because multiple people were involved in both the positive and adverse employment decisions and the decisions occurred two years apart). Moreover, Wood's termination did not occur "within a short period of time" after her hiring nor are all of the Supervisors and Wood members of the same protected class. *See Grelle*, 539 F. Supp. 3d at 667. Therefore, this court does not apply the same-actor inference in the County's favor when considering its motion for summary judgment.

    e. After-Acquired Evidence

Finally, at this juncture, the court is not prepared to determine whether or to what extent the after-acquired evidence doctrine applies to or potentially limits Wood's damages. The County contends that evidence of the text messages between Wood and Supervisor Pearson and Wood's alleged retroactive pay raise "was of such a severity that [she] would have in fact been terminated on [either ground] alone if [the County] had known of it at the time of the discharge." Docket 175 at 11-12 (quoting *Adams v. City of Gretna*, 2009 WL 2883038, at *7 (E.D. La. Sept.

---

[7] The court need not decide whether the Board's reappointment decision is comparable to a hiring decision for purposes of the application of the same-actor inference.

2, 2009) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362 (1995))). The County offers testimony from President Newson and Supervisor Wood to support its assertion that Wood would have been terminated based on discovery of her text messages with Supervisor Pearson. President Newson testified that he would have voted to terminate Wood based on her text messages with Pearson. While Supervisor Washington did not explicitly say he would have voted to terminate Wood on this basis, he testified that the messages reinforced the "gut feeling that [he] had at the time, that […] she really wasn't serving the whole Board… It just – it don't surprise me." Doc. 157-12 at 83:21-25.

The County submitted a pay stub it purports to be a "supplemental check" that was issued to Wood in December 2019 wherein she allegedly received the difference between her salary of $75,000 in January 2019 and the $90,000 pay raise she received effective February 1, 2019. Ann Hoskins, Wood's replacement, testified that she was seeing the pay stub for the first time, and although she did not know how Wood would have been able to pay herself retroactively, the pay stub reflected retroactive pay. Wood denies this assertion and testified, generally, that a copy of the Board minutes indicating when a pay increase becomes effective are given directly to the payroll clerk, thus precluding the possibility of retroactive pay for an employee.

The County has not produced evidence that a majority of the Board members would have terminated Wood based on the discovery of her text messages with Supervisor Pearson, and the only evidence the County offered to explain the contents of the pay stub is Ms. Hoskin's testimony. Ms. Hoskins was no longer working for the County at the time of her testimony and there is no evidence that payroll issues were within the purview of her job responsibilities during her tenure as County Administrator. The court is not prepared to find that the pay stub itself is

substantial evidence of wrongdoing constituting a fireable offense without further proof.[8] Because a jury could reasonably find that the County failed to satisfy its burden of proving Wood would have been fired for these alleged events alone, the County has not met its burden of proving the termination would have resulted from these incidences. *See McKennon*, 513 U.S. at 360 ("[P]roving that the same decision would have been justified ... is not the same as proving that the same decision would have been made.").

*Wood's Motion to Strike Unsupported Evidence*

Wood asks this court to strike certain evidence submitted in support of the County's motion for summary judgment. Because the court is denying the County's motion, it is not necessary to decide Wood's objections at this stage. The motion is denied without prejudice, and Wood may renew her objections at trial.

*Conclusion*

For the foregoing reasons, the court finds Wood has established genuine issues of material fact as to whether the County's legitimate, non-discriminatory reasons for terminating her employment were pretextual. Therefore, the County's Motion for Summary Judgment is DENIED. Wood's Motion to Strike Unsupported Evidence is DENIED without prejudice.

**SO ORDERED**, this the 21st day of December, 2023.

/s/ David A. Sanders
UNITED STATES MAGISTRATE JUDGE

---

[8] The check stub contains deductions that do not, on the face of the document, equal the net pay documented. The court cannot determine on its own how Wood's 2019 pay was calculated without further evidence.